UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NICHOLAS ROTOLO, JR.,

                      Plaintiff,

v.                                      6:16-CV-1252
                                      (WBC)

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

APPEARANCES:                     OF COUNSEL:

OLINSKY LAW GROUP         HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State St., Ste. 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.     JASON P. PECK, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      This matter was referred to me, for all proceedings and entry of a final judgment,

pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in

accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local

Rule 73.1 and the consent of the parties. (Dkt. Nos. 14, 15.).

      Currently before the Court, in this Social Security action filed by Nicholas Rotolo,

Jr. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 11, 12.)  For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1957.  (T. 55.)  He completed one year of college.  (T. 162.)  Generally, Plaintiff's alleged disability consists of back injury/herniated discs, arthritis, post tonsillar cancer, and esophageal reflux.  (T. 162.)  His alleged disability onset date is October 3, 2008. (T. 55.)  His date last insured is December 31, 2008.  (*Id.*)

### B.    Procedural History

On December 16, 2010, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act.  (T. 55.)  Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ").  On June 20, 2011, Plaintiff appeared before the ALJ, Elizabeth W. Koennecke.  (T. 22-54.)  On July 29, 2011, ALJ Koennecke issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 5-19.)  On March 10, 2012, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-3.)  Thereafter, Plaintiff timely sought judicial review in this Court.  The District Court remanded under Sentence Six of 42 U.S.C. § 405(g) in a decision dated June 9, 2014.  (T. 558-580.)  On June 28, 2014, the AC vacated and remanded the July 29, 2011 unfavorable decision.  (T. 581-583.)  On February 23, 2015, Plaintiff again appeared before ALJ Koennecke.  (T. 489-515.)  ALJ Koennecke held a supplemental hearing on July 6, 2016.  (T. 516-539.)  On August 10, 2016, ALJ Koennecke issued a written decision finding Plaintiff not disabled

under the Social Security Act.  (T. 456-483.)  Thereafter, Plaintiff timely sought judicial

review in this Court.

### C.     The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and

conclusions of law.  (T. 463-475.)  First, the ALJ found that Plaintiff met the insured

status requirements through December 31, 2008 and Plaintiff had not engaged in

substantial gainful activity since October 3, 2008.  (T. 463.)  Second, the ALJ found that

Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine.

(*Id.*)  Third, the ALJ found that Plaintiff did not have an impairment that meets or

medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P,

Appendix. 1.  (T. 464.)  Fourth, the ALJ found that Plaintiff had the residual functional

capacity ("RFC") to perform light work; that there was no limit in his ability to sit or stand,

and Plaintiff could "chose to perform the jobs in a sitting or standing position."  (T. 465.)[1]

Fifth, the ALJ determined that Plaintiff capable of performing his past relevant work as

an office helper and, in the alternative, that there were jobs that existed in significant

numbers in the national economy Plaintiff could perform.  (T. 473-474.)

---

[1]     Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. § 404.1567(b).

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes four separate arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues the ALJ erred in finding that Plaintiff had past relevant work as an office helper.  (Dkt. No. 11 at 11-13 [Pl.'s Mem. of Law].)  Second, Plaintiff argues the ALJ erred in finding his history of squamous cell tonsillar carcinoma was not a medically determinable impairment.  (*Id.* at 13-15.)  Third, Plaintiff argues the ALJ erred in finding that there were other jobs existing in significant numbers in the national economy that he could perform.  (*Id.* at 15-18.)  Fourth, and lastly, Plaintiff argues the ALJ erred in his assessment of the medical source opinions in the record. (*Id.* at 18-23.)

### B.     Defendant's Arguments

In response, Defendant makes four arguments.  First, Defendant argues the ALJ reasonably and correctly found Plaintiff's past relevant work included work as an office helper.  (Dkt. No. 12 at 7-9 [Def.'s Mem. of Law].)  Second, Defendant argues the ALJ reasonably and correctly found that Plaintiff's history of squamous cell tonsillar carcinoma was not a medically determinable impairment during the relevant period.  (*Id.* at 9-10.)  Third, Defendant argues the ALJ reasonably and correctly found that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform.  (*Id.* at 10-15.)  Fourth, and lastly, Defendant argues the ALJ reasonably and correctly assigned weight to the medical source opinion of the record.  (*Id.* at 15-24.)

III.    **RELEVANT LEGAL STANDARD**

A.    **Standard of Review**

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

### IV.    ANALYSIS

For ease of analysis, Plaintiff's arguments will be addressed out of order.

### A.  Medically Determinable Impairment

Plaintiff contends that the ALJ erred in her determination that Plaintiff's history of squamous cell carcinoma was not a medically determinable impairment at step two and contends that the error resulted in an improper RFC determination.  (Dkt. No. 11 at 11-13 [Pl.'s Mem. of Law].)  The Commissioner maintains that the ALJ's step two determination was proper and supported by substantial evidence.  (Dkt. No. 12 at 7-8 [Def.'s Mem. of Law].)

Pursuant to the regulations, disability may be found only if a plaintiff has a medically determinable impairment.  *See* 20 C.F.R. § 404.1505(a)[2].  Such an impairment must "result from anatomical, physiological, or psychological abnormalities which can be show by medically acceptable clinical and laboratory diagnostic techniques" and "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [plaintiff's] statement of symptoms."  *Id.* at § 404.1508.

At step two of the sequential evaluation process, the ALJ must determine whether the plaintiff has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c).  Only medically determinable impairments may be considered severe or non-severe.  *See id.* at § 404.1520(a)(4)(ii).  Therefore, if an impairment is not classified as a medically determinable impairment the ALJ does not need to evaluate whether the impairment is severe or not and need not consider such impairment in formulating her RFC

---

[2]    Effective March 27, 2017, 20 C.F.R. § 404.1505 has been amended, as have other regulations and SSRs cited herein. Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier regulations and SSRs.

determination.  *See id.* at § 404.1545(a)(2) (an ALJ will consider all severe and non-severe impairments in formulating an RFC determination).

Any error the ALJ made in determining that Plaintiff's history of squamous cell carcinoma was not a medically determinable impairment was harmless.  Plaintiff asserts that failure to classify this impairment as a medically determinable impairment, and therefore either severe or non-severe, lead to an improper RFC determination because had the ALJ found the impairment a medically determinable impairment, and either severe or non-severe, she would have been required to take into consideration the impairment's limitations.  (Dkt. No. 11 at 15 [Pl.'s Mem. of Law].)  Plaintiff asserts that as a result of treatment for his squamous cell carcinoma he had to have a total tooth extraction and had problems with his equilibrium.  (*Id.*)

First, Plaintiff fails to provide any work related functional limitations that stemmed from Plaintiff's tooth extraction.  It is unclear how a total tooth extraction would prevent Plaintiff from performing the basic functional demands of work.  Second, although Plaintiff complained of problems with equilibrium and had to have tubes placed in his ears (T. 222), the treatment was successful and subsequent notations clearly indicated that Plaintiff no longer had equilibrium concerns.  (T. 218, 219, 221, 223.)  Therefore, any error the ALJ may have made in her determination that Plaintiff's history of cancer was not a medically determinable impairment was harmless.  Plaintiff failed to show that his history of cancer and subsequent tooth extraction and loss of equilibrium (which was successfully treated) caused work related functional limitations.

**B.  Medical Source Opinion**

Plaintiff contends that the ALJ erred in her assessment of the medical source opinions in the record. As an initial matter, the case at hand is particularly challenging because during the relevant time period between Plaintiffs' alleged onset date of October 3, 2008 and his date last insured of December 31, 2008, the record contained very little medical evidence.

First, Plaintiff asserts that the ALJ violated his due process rights because he was not afforded an opportunity to cross-examine non-examining independent medical examiner, Eric Schmitter, M.D. (Dkt. No. 11 at 18-20.) As indicated in the ALJ's decision, after the February 23, 2015 hearing the ALJ obtained interrogatories from medical expert Dr. Schmitter. (T. 460.) Plaintiff requested an opportunity to cross-examiner Dr. Schmitter. (T. 788-795.) Dr. Schmitter was unavailable for a hearing and the ALJ obtained medical interrogatories from medical expert Charles Linsenmeyer, M.D. (T. 896-903.) Plaintiff did not request an opportunity to cross-examine Dr. Linsenmeyer. The ALJ requested a supplemental hearing; however, Dr. Linsenmeyer was unavailable for a hearing. Therefore, the ALJ held a supplemental hearing on July 6, 2016 at which Plaintiff, Plaintiff's counsel, and medical expert Steven Goldstein, M.D. were present.

Plaintiff relies on the holding in *Townley v. Heckler,* 748 F.2d 109, 114 (2d Cir. 1984) in support of his argument. The *Townley* Court held that a plaintiff's due process rights were violated because she was not offered the chance to cross-examine testimony taken post hearing from a vocational expert. *Townley,* 748 F.2d at 114. However, the situation presented in the case at bar falls more in line with the Second Circuit's holding in *Yancy v. Apfel,* 145 F.3d 106 (2d Cir. 1998). In *Yancy* the plaintiff

argued that her due process rights were violated when the ALJ refused to issue a subpoena so that plaintiff could cross-examine a medical expert who supplied medical evidence prior to the hearing and decision.  *Yancy,* 145 F.3d at 111.

The Second Circuit held that "the right to due process in a social security disability hearing does not require that a reporting physician be subpoenaed any time a [plaintiff] makes such a request."  *Yancy,* 145 F.3d at 111.  The *Yancey* Court reasoned that "[t]he plain language of [20 C.F.R. § 404.950(d)(1)] clearly places the decision to issue a subpoena within the sound discretion of the ALJ."  *Id.*  The Court further reasoned that a subpoena, and cross-examination, were not required where the ALJ allowed the plaintiff a "fair and meaningful opportunity to present her case;" there was no indication the medical opinion in question was inaccurate or biased; and further, where there was no indication that subpoenaing the medical expert would have "added anything of value to the proceedings."  *Id.* at 113.  Therefore, absent a need to fully develop the evidence of the case, the opportunity to cross-examine a reporting physician is not required.  *See  Baker v. Comm'r Soc. Sec.,* No. 1:15-CV-00388, 2017 WL 5589483, at *4 (W.D.N.Y. Nov. 21, 2017) (ALJ's failure to grant plaintiff's request to subpoena doctor did not violate plaintiff's due process rights because plaintiff failed to establish that the doctor's testimony was "reasonably necessary" for the "full presentation" of her case); *see also White v. Comm'r of Soc. Sec.*, No. 5:14-CV-1140 GTS/WBC, 2016 WL 2865724, at *8 (N.D.N.Y. Apr. 21, 2016), *report and recommendation adopted*, No. 5:14-CV-1140 GTS/WBC, 2016 WL 2858859 (N.D.N.Y. May 16, 2016) (where the medical record before the ALJ was complete and plaintiff had the opportunity to supply, and did supply, treatment records and medical source

statements from providers, the ALJ did not violate plaintiff's due process rights in denying his request to subpoena consultative examiner);  *see also Christy v. Comm'r of Soc. Sec.,* No. 5:13-CV-1552 GTS/WBC, 2015 WL 6160165, at *13 (N.D.N.Y. Oct. 20, 2015).

Here, the record before the ALJ at the time of July 2016 hearing was complete. The record contained medical records from 1996 (T. 334) through 2014 (T. 860). Plaintiff submitted a treating source statement as well.  (T. 860-861.)  The record further contained two medical source statements from non-examining medical examiners.  (T. 873-883, 896-903.)  A non-examining medical source, Steven Goldstein, M.D., also reviewed the record and testified at the July 2016 hearing.  (T. 522-538.)  Plaintiff's record was complete, the record included medical treatment notations, a treating source statement, medical source opinions from non-examining medical physicians, testimony from a non-examining medical physician, and Plaintiff's testimony.  Therefore, Plaintiff's due process rights were not violated.  Here, Plaintiff did not have an absolute due process right to cross-examine a medical source and Plaintiff had a full and fair hearing because his record was complete.

Second, Plaintiff asserts that the ALJ erred in affording any weight to the medical source statements provided by Bruce Baker, M.D. and Walter Heap, M.D., because the opinions were rendered outside of the relevant time period.  (Dkt. No. 11 at 20-22 [Pl.'s Mem. of Law].)  The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a

whole, and the specialization (if any) of the opinion's source.  20 C.F.R. §
404.1527(c)(1)-(6).

Plaintiff is correct in his assertion that Drs. Baker and Heap's opinions were of
limited evidentiary value because they were rendered well before the relevant time
period.  However, their treatment observations and statements were included in
Plaintiff's medical record and as such the ALJ took them into consideration.  The ALJ
acknowledged that the doctors' opinions were rendered prior to the period under review;
however, the opinions were rendered during a time Plaintiff was seeking treatment for
his back.  (T. 466.)  Ultimately, the ALJ afforded statements from Drs. Baker and Heap
only "some weight."  (T. 466.)  Therefore, the ALJ did not err in her assessment of Drs.
Baker and Heap.

Third, Plaintiff argues the ALJ erred in her assessment of treating source, Daniel
DiChristina, M.D.  (Dkt. No. 11 at 22-23 [Pl.'s Mem. of Law].)  The Second Circuit has
long recognized the 'treating physician rule' set out in 20 C.F.R. § 404.1527(c).  " '[T]he
opinion of a claimant's treating physician as to the nature and severity of the impairment
is given 'controlling weight' so long as it is 'well-supported by medically acceptable
clinical and laboratory diagnostic techniques and is not inconsistent with the other
substantial evidence in the case record.' "  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir.
2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).

There are situations where the treating physician's opinion is not entitled to
controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the
frequency, length, nature, and extent of treatment; (2) the amount of medical evidence
supporting the opinion; (3) the consistency of the opinion with the remaining medical

evidence; and (4) whether the physician is a specialist.' " *Greek*, 802 F.3d at 375

(quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).  However, "[w]here an

ALJ's reasoning and adherence to the Regulations is clear, she is not required to

explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of

Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), Report

and Recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing

*Atwater v. Astrue*, 512 F. App'x. 67, 70 (2d Cir. 2013)).  After considering these factors,

"the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a

treating physician's opinion.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at

129).  "The failure to provide 'good reasons for not crediting the opinion of a claimant's

treating physician is a ground for remand.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*,

537 F.3d at 129-30).

On September 2, 2014, Dr. DiChristina provided a retrospective opinion of

Plaintiff's condition prior to December 31, 2008.  (T. 858-856.)  Dr. DiChristina stated

that based on his records, Plaintiff was "totally disabled in 2008."  (T. 858.)  Dr.

DiChristina referred to treatment notations from November of 2003 which referred to an

MRI from 1996 indicating right-sided disc herniation at L5-S1, and an examination that

was "consistent with [the MRI] findings." (*Id.*)  Dr. DiChristina outlined an examination

from July of 2010 which indicated Plaintiff continued to have deterioration, positive

straight leg raises, and muscle weakness with reduction in both his knee extension and

flexion strength.  (*Id.*)  Dr. DiChristina stated that nothing in his notations would indicate

that Plaintiff's condition improved between 2003 and 2010 and both examinations were

consistent with "lumbosacral disc herniation."  (*Id.*)  Dr. DiChristina stated that during the

relevant time period, Plaintiff would be unable to maintain employment because he would be absent for "significant periods of time" and would be "unable to maintain any position for long stretches." (*Id*.)  He further opined Plaintiff would be unable to continuously sit for more than ten minutes, unable to continuously stand for more than 15 minutes, and would need to "regularly" change positions. (*Id*.)

On October 17, 2014, Dr. DiChristina submitted another statement.  (T. 860-861.) Therein Dr. DiChristina stated that it was his medical opinion that based on objective evidence Plaintiff suffered from a degenerative condition and it would be unlikely for him to maintain employment due to absenteeism and an inability to continuously sit or stand. (T. 860.)  The doctor further stated that Plaintiff had to end his job as a snow plow operator because he was unable to handle the physical requirements.  (T. 861.)

The ALJ afforded Dr. DiChristina's opinion that Plaintiff would be unable to stand and/or sit for extended periods of time "some weight" and included the limitation in her RFC determination by allowing Plaintiff the ability to change positions at will.  (T. 467.) The ALJ afforded the remainder of Dr. DiChristina's opinion "little weight."  (*Id*.)

As an initial matter, Dr. DiChristina's statements that Plaintiff was "unable to work" and "fully disabled" are findings reserved to the Commissioner.  *See* 20 C.F.R. § 404.1527(d).  "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability. A treating physician's statement that the claimant is disabled cannot itself be determinative."  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *Taylor v. Barnhart*, 83 F. App'x 347, 349 (2d Cir. 2003) ("Dr. Desai's opinion that Taylor was 'temporarily totally disabled' is not entitled to any weight, since the ultimate issue of disability is reserved

for the Commissioner.  Accordingly, we find no error in the ALJ's decision not to accord controlling weight to Dr. Desai's opinion.") (internal citations omitted); *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 80 (N.D.N.Y. 2005) (ALJ did not err in his decision not to accord treating physician's opinion plaintiff was totally disabled controlling weight).

In affording Dr. DiChristina's opinions "some weight" the ALJ noted that the doctor had only treated Plaintiff once prior to his date last insured; his limitations were inconsistent with his 2003 report which noted Plaintiff was not taking medication, had not had an MRI  in over eight years, and was in the process of starting his own business; he did not treat Plaintiff again until 2010, a year and a half after his date last insured and six years since his first examination; and treatment notations from 2010 indicated that Plaintiff was not taking medication.  (T. 467-468.)

The ALJ further concluded that Dr. DiChristina's opinion was inconsistent with objective medical imaging based on other medical opinions in the record.  The ALJ acknowledged that Dr. DiChristina's 2003 examination showed positive straight leg raises, muscle weakness, and other objective findings consistent with an MRI from 1996; however, the ALJ noted that Dr. Goldstein testified at the hearing that in his opinion Dr. DiChristina's findings on examination were not consistent with diagnostic imaging.  (T. 468.)  The ALJ also noted that Dr. Baker reviewed the 1996 MRI and released Plaintiff to work.  (*Id.*)[3]  The ALJ also stressed that during the relevant time period, October 3, 2008 to December 31, 2008, the record was devoid of any clinical

---

[3]    The exhibit cited by the ALJ, Exhibit 13F, was authored by Dr. Heap, not Dr. Baker.  (T. 468.)  This appears to be a harmless typo.  (T. 334-336.)

findings.  (*Id.*)  Lastly, the ALJ concluded that Dr. DiChristina's opinions were inconsistent with Plaintiff's work activity.  (T. 469.)

Plaintiff maintains that the ALJ erred in her assessment of Dr. DiChristina's statement because she "rejected" his statement in favor of Dr. Goldstein who had never treated Plaintiff.  (Dkt. No. 11 at 20 [Pl.'s Mem. of Law].)  The Regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims who's "opinions may constitute substantial evidence in support of residual functional capacity findings."  *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing *Delgrosso v. Colvin,* 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015); *see also Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir. 2016); *Monette v. Colvin,* 654 F. App'x 516 (2d Cir. 2016); *Snyder v. Colvin,* No. 15-3502, 667 F. App'x 319 (2d Cir. 2016).  Dr. Goldstein testified at the hearing that the 1996 MRI findings did not support the limitations found by Dr. DiChristina in his 2003 examination.  (T. 530-531.)  Dr. Goldstein did not provide an opinion regarding Plaintiff's functional ability during the relevant time period, because there were no physical examinations in the records during that time period.  (T. 527.)  Here, the ALJ did not err in relying, in part, on the testimony of a non-examining doctor in assessing the opinion of a treating source.  The ALJ relied on Dr. Goldstein's opinion as one factor in weighing Dr. DiChristina's opinion and resolving conflicts in the record.  Therefore, Plaintiff's argument that the ALJ erred in relying on the testimony of non-examining medical expert, Dr. Goldstein, in her evaluation of Dr. DiChristina's opinion fails.

Plaintiff next asserts the ALJ's reliance on Dr. Goldstein's testimony was "misguided" because Dr. DiChristina was an orthopedic surgeon and therefore well qualified to diagnose a herniated disc.  (Dkt. No. 11 at 20 [Pl.'s Mem. of Law].) However, Dr. Goldstein did not question Dr. DiChristina's diagnosis of herniated disc. Dr. Goldstein did not agree that the objective findings on Dr. DiChristina's examination of Plaintiff were supported by the 1996 MRI.  Therefore, the ALJ's reliance on Dr. Goldstein's testimony was not misguided.

Plaintiff argues that Dr. DiChristina's opinion was supported by James Kowalczyk, M.D. and Martin Schaeffer, M.D.  (Dkt. No. 11 at 21 [Pl.'s Mem. of Law].)  In her review of the medical evidence, the ALJ outlined Dr. Kowalczyk's 2004 statement that Plaintiff was "temporarily, totally disabled."  (T. 467.)  The ALJ afforded the statement "limited weight" reasoning it was based on Worker's Compensation standards, an opinion reserved to the Commissioner, and Dr. Kowalczyk did not provide any treatment notations during the period under review.  (*Id.*)  The ALJ also discussed the opinion of Dr. Schaeffer, who opined in 2012 that Plaintiff was limited to less than a full range of sedentary work.  (T. 842-844.)  The ALJ afforded "limited evidentiary weight" to Dr. Schaeffer's assessment reasoning that he did not treat Plaintiff until 2012, he relied on records and objective imaging from 2004, and the statement was inconsistent with treatment notes.  (T. 469.)  For example, Dr. Schaeffer indicated that Plaintiff was taking pain medication; however, treatment notations stated Plaintiff was not taking medication.  (*Id.*)  Therefore, the ALJ provided good reasons for affording weight to Drs. Kowalczyk and Schaeffer's statements.

Overall, the ALJ's RFC determination was not inconsistent with Dr. DiChristina's opinion that Plaintiff could not sit and/or stand for more than ten to fifteen minutes.  The RFC provided that Plaintiff be able to "perform the jobs in a sitting or standing position." (T. 465.)  Dr. Christina did not provide an opinion regarding Plaintiff's ability to perform any other functional demands of work.  The ALJ thoroughly outlined all of the medical evidence in the record and provided good reasons for the weight afforded to those opinions.  Although Plaintiff contends that other medical opinions, such as Drs. Kowalczyk and Schaeffer, support Dr. DiChristina's opinion, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position.  Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).  Here, the ALJ provided good reasons for affording weight to the various medical opinions in the record and her determinations were supported by substantial evidence.

### C. The ALJ's Step Four Determination

At step four of the sequential process, the ALJ must determine whether the plaintiff has the RFC to perform the requirements of his past relevant work.  20 C.F.R. §

404.1520(f).  Here, the ALJ determined at step four that Plaintiff had the RFC to perform his past relevant work as an office helper.  (T.473.)

Plaintiff argues that the ALJ erred in her determination that he had past relevant work as an office helper.  (Dkt. No. 11 at 9-11 [Pl.'s Mem. of Law].)  Any error the ALJ may have made in determining Plaintiff could perform work as an office helper was harmless.  Here, the ALJ proceeded to step five of the evaluation and determined that given Plaintiff's vocational factors and RFC there were a significant number of jobs in the national economy Plaintiff could perform.  (T. 473-474.)  Therefore, even if Plaintiff did not have past relevant work as an office helper, the ALJ determined that in the alternative there were a significant number of jobs in the national economy which Plaintiff could perform.

### D.  The ALJ's Step Five Determination

Plaintiff argues that the ALJ erred in finding that there were other jobs existing in significant numbers in the national economy because a sit/stand option is a "reasonable accommodation" under the American's with Disabilities Act ("ADA") and therefore any job that requires an accommodation cannot be used to deny a plaintiff's claim for disability benefits pursuant to SSR 00-1c "Disability Insurance Benefits – Claims Filed Under Both the Social Security Act and the Americans with Disabilities Act."  (Dkt. No. 11 at 15-18 [Pl.'s Mem. of Law].)  Plaintiff's argument is misleading.

SSR 00-1c concerns "whether an individual's claim for, or receipt of, disability insurance benefits filed under the [SSA] would preclude the individual from pursuing relief under the [ADA]."  SSR 00-1c, 2000 WL 38896 (Jan. 7, 2000).  Plaintiff was not seeking relief under the ADA and therefore the SSR is inapplicable here.

SSR 00-1c follows the Supreme Court's decision in *Cleveland v. Policy Mgmt. Syss. Corp.*, 119 S. Ct. 1597 (1999), which clarified that an individual's application for social security disability insurance benefits does not necessarily preclude an individual from successfully pursuing a simultaneous claim under the ADA. *Cleveland*, 119 S. Ct. at 1601-1604.  SSR 00-1c does not require the ALJ to consider "reasonable accommodations" for alternative work at step five of the sequential evaluation process. *See Harry v. Colvin*, No. 1:15-CV-01514, 2016 WL 4708009, at *17 (N.D. Ga. Sept. 8, 2016); *see also Straite v. Berryhill*, No. 3:16-CV-00006, 2017 WL 4052170, at *4 (W.D.N.C. Sept. 13, 2017) (plaintiff's argument that a sit/stand option was a reasonable accommodation under SSR 00-1c and necessitated a finding of disabled was rejected because SSR 00-1c merely underscores that a person who files for disability under the SSA is not precluded from pursuing relief under the ADA).

SSR 00-1c further discusses the burden that such a requirement would place upon the Commissioner in terms of application and in stretching already overburdened administrative resources.  SSR 00-1c, 2000 WL 38896, at *5 (discussing the number of claims for disability benefits received annually by the SSA, its limited administrative resources, and practical difficulty with trying to evaluate "reasonable accommodation" – which could turn on "highly disputed workplace-specific matters).  Because SSR 00-1c is not applicable in this case and SSR 00-1c does not require the ALJ to consider "reasonable accommodations" at step five, Plaintiff's argument fails.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is

    **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is

> **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's unfavorable determination is **<u>AFFIRMED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated:        December 11, 2017

William B. Mitchell Carter
U.S. Magistrate Judge

21